IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENJAMIN SMITH, | : | CIVIL ACTION NO. **3:CV-05-2663** |
| | : | |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| OFFICER SHADY, et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

The Plaintiff, Benjamin Smith, currently an inmate at the Federal Corrections Institute at Ray

Brook, New York ("FCI- Ray Brook"), filed this action pursuant to 42 U.S.C. § 1983 on December

27, 2005, naming fourteen (14) Defendants, employed by the Pennsylvania Department of

Corrections ("DOC").[1]  The Plaintiff also filed a motion for leave to proceed *in forma pauperis* (Doc.

2), which was granted (Doc. 14), and three Motions for Appointment of Counsel (Docs. 4, 33, 38),

which were denied.  (Docs. 7, 36, 41).  Upon review of the Plaintiff's pleading, we entered a Report

and Recommendation ("R&R") on January 11, 2006, finding that, while the Plaintiff stated an Eighth

Amendment deliberate indifference claim and conditions of confinement claim against two

Defendants, he did not state a claim against the other 12 Defendants, who were subsequently

dismissed.  On February 6, 2006, the Plaintiff filed an objection to the January 2006 R&R.  (Doc.

12).  The District Court adopted the R&R in part, and reversed it in part, reinstating Francis

Dougherty, Early Walker and Francis Tennis as Defendants.

---

[1]  The Plaintiff's claims arise out of his confinement at SCI-Rockview.

On May 1, 2006, Defendants Francis Dougherty, Earl Walker, and Franklin Tennis, filed a Motion to Dismiss the Plaintiff's retaliation claims against them.  **(Doc. 29)**.  The remaining Defendants, Corrections Officer Shady, and the former prison chaplain, Muhammad Ajjeh,[2] have not filed a Motion to Dismiss, nor have they joined in the stated Motion to Dismiss.  The Motion to Dismiss is ripe for disposition.

## II.  Motion to Dismiss Standard.

When evaluating a motion to dismiss, the Court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988).  A complaint that sets out facts that affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).  When a motion to dismiss is filed, the Court is to determine whether the plaintiff is entitled to further evidence from the sufficiency of the allegations in the complaint.  *Maio v. Aetna, Inc.*, 221 F. 3d 472, 482 (3d Cir. 2000).

---

[2]  We note that the United States Marshal has not been able to serve Defendant Muhammad Ajjeh, as he cannot be located. (*See* Doc. 17, Doc. 19, Doc. 26, Doc. 27, Doc. 28, Doc. 49 & Doc. 56).  According to the Marshal's latest attempt to serve Defendant Muhammad Ajjeh, he is no longer in the United States. (Doc. 56).

## III. Discussion.

### *A. Exhaustion*

The Plaintiff's First Amendment retaliation claim against Defendants Dougherty, Walker and Tennis stated that, "After I filed a complaint [against CO Shady] Francis Dougherty [and] Earl Walker retaliated against me by cutting off my cable service...[a]lso for months after Superintendent Tennis began opening and reading my legal mail, even violating a court order to desist from doing so, outside my presence." (Doc. 1).   The Plaintiff claimed that CO Shady and Chaplain Muhammad Ajjeh sexually assaulted him.   The Defendants contend that the retaliation claims against them should be dismissed, because the Plaintiff did not exhaust his administrative remedies, namely by failing to file any grievances about the alleged retaliation by the stated three Defendants.   (Doc. 31, pp. 6-7).  We agree with the Defendants' contention, and recommend that the Defendants' Motion to Dismiss be granted.[3]

Under the Prisoner Litigation Reform Act ("PLRA"), an inmate must exhaust his available administrative remedies before filing a federal lawsuit.  42 U.S.C. § 1997(e); *Woodward v. Ngo*, — U.S. — (2006), 126 S.Ct. 2378, 2383 (2006) (holding that a prisoner must properly exhaust his administrative remedies is necessary to satisfy the PLRA exhaustion requirement); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that exhaustion requirement under § 1997e(a) applies to all actions regarding prison conditions, including § 1983 actions, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

---

[3] We note that while the Defendants' Motion to Dismiss indicates it is based on the Plaintiffs' failure to state a claim against them, their Brief also asserts the Plaintiff's failure to exhaust his administrative remedies.  (Docs. 29 & 31, p. 11).

wrong); *Booth v. Churner*, 206 F. 3d 289, 293 (3d Cir. 2000); *Jetter v. Beard*, C.A. No. 05-5184, slip. op. p. 3 (3d Cir. May 31, 2006) (Non-precedential).   The Defendant has the burden of pleading and proving as an affirmative defense that exhaustion has not occurred. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002) (involving a Motion to Dismiss).   In an exhaustion analysis, the first inquiry is whether the Plaintiff has literally exhausted his administrative remedies or whether there are "further avenues of relief available to him within the prison's inmate grievance process." *Spruill v. Gillis*, 372 F. 3d 218, 232 (3d Cir. 2004).   "To determine whether a prisoner has properly exhausted administrative remedies, the Court looks to the prison grievance procedure, not to federal law." *Jetter*, C.A. No. 05-5184, slip. op. p. 3 (citing *Spruill*, 373 F.3d at 231).   The Department of Corrections ("DOC") provides for three levels of appeal of a grievance under DC-ADM-804. *Id*.  (Doc. 31, Att. 1, Ex. A, ¶ 3.).

Here, we find that, in failing to pursue all three levels of appeal as required by DC-ADM-804, the Plaintiff did not exhaust his administrative remedies in regards to his First Amendment retaliation claims against Defendants Dougherty, Walker and Tennis.[4]   The Defendants have raised the failure to exhaust defense as to the Plaintiff's retaliation claims against them.  (Doc. 31, pp. 10-11).   As supporting evidence, they have offered the Declaration of Jeffrey A. Rackovan, the Grievance Coordinator, which shows that the Plaintiff did not file a grievance alleging that any of the staff retaliated against him in any manner.  (Doc. 31, Att. 1, Ex. A, p. 8, ¶ 20.).   The Defendants have also included the Declaration of Cindy G. Watson, a Grievance Review Officer, who

---

[4] Since the Defendant's Brief thoroughly details the grievance process under DC-ADM-804, that was available to the Plaintiff, we shall not repeat it herein.  (Doc. 31, pp. 4-6).

concurred that the Plaintiff has never filed a grievance alleging that any of the Defendants retaliated against him. (*Id*. at Ex. B, p. 6, ¶14.). In addition, the Declaration of Cindy G. Watson indicated that the Plaintiff exhausted four of the twelve grievances he filed while at SCI-Rockview, and that none of the four exhausted grievances alleged retaliation by any of the Defendants against the Plaintiff. (*Id*. at Ex. B, p. 4, ¶ 9.-14.).

There is no dispute that in January 2004, the Plaintiff filed a grievance (# 74348) claiming that CO Shady brushed against the Plaintiff, teased him in a provocative manner and grabbed his buttocks. (Doc. 31, pp. 2-3 & Doc. 31, Att. 1, Ex. A, ¶ 19.). The Defendants' evidence also reveals that the Plaintiff did not file a grievance during his confinement at SCI-Rockview claiming that Defendants Dougherty, Walker and Tennis retaliated against him due to his January 2004 grievance against CO Shady. (Doc. 31, Att. 1, Ex. A, ¶ 20.). As the Defendants recognize (Doc. 31, pp. 6-7), in Plaintiff's grievance # 77702, he complained about the manner in which his cable TV service was shut off, and he stated that he had no cable problems until he filed his grievance for sexual harassment against a fellow staff member. (Doc. 31, Att. 1, Ex. A-6, p. 2). However, we agree with the Defendants that Plaintiff's grievance # 77702 concerned the shutting off of his cable service and did not claim retaliation by Defendants Dougherty, Walker and Tennis. Also, the Defendants have shown that the Plaintiff did not file any grievance alleging that any staff member retaliated against him, nor did he pursue any such grievance to final review. (Doc. 31, Att. 1, Ex. A, ¶ 20. & Ex. B, ¶ 14.).

The Plaintiff has not controverted Rackovan's or Watson's Declarations, or disputed any of the facts that the Defendants' evidence has shown. (Doc. 53). Rather, he states that he exhausted

his administrative appeal options regarding his Grievance No. 77702 and Grievance No. 84142.

(Doc. 53, p. 1, 5 & Doc. 53, Att. 4-6).  In Grievance No. 77702, the Plaintiff stated that "I also note

that there was no cable problems until I filed a complaint ."  (*Id*. at Att. 4-5).  However, as stated,

Grievance No. 77702 involved claims about the Plaintiff's cable TV being shut off due to insufficient

funds, not retaliation, and in fact, the Plaintiff never filed a complaint concerning the alleged

retaliation by Defendants Dougherty, Walker and Tennis.  (*Id*.).  Neither was Grievance No. 84142

a retaliation claim against any of the Defendants, but rather a complaint regarding the opening of

the Plaintiff's legal mail outside of his presence  (*Id*. at Att. 6).  Moreover, in his Brief in Opposition

to the Defendants' Motion to Dismiss, the Plaintiff does not respond to the Defendants' argument

that he never filed a grievance against Defendants Dougherty, Walker, and Tennis for retaliation.

Thus, we agree with the Defendants that the Plaintiff failed to exhaust his administrative remedies

regarding his retaliation claims against them.

Following *Spruill*, as the Defendants recognize (Doc. 31, p. 10), an exhaustion analysis must

also include the application of the procedural default rule, which instructs the Court to consider

whether grievances for which prisoners have not exhausted their administrative remedies are

procedurally defaulted.  *Spruill*, 372 F. 3d at 230.  The procedural default rule recognizes the

default procedures within the applicable prison grievance system.[5]  *Id*. at 231.  The procedural

requirement of the prison's grievance system cannot violate a prisoner's rights under the

Constitution or § 1997e(a), and a prisoner's "compliance with the administrative remedy scheme

---

[5]*Spruill* rejected a "futility test," which would have federal courts evaluate whether a prisoner's claims would be futile, had they exhausted all of the administrative remedies. *372 F.3d* at 231 n. 10.

will be satisfactory if it is substantial." *Id*. at 232 (Citation omitted). When, in a § 1983 claim, a federal court evaluates the evidence of a prisoner's compliance with § 1997e(a), the procedural status may have been decided by a prison grievance appellate body; however, the court may have to undertake its own procedural default inquiry if the issue of procedural default has not been examined by a prison grievance appellate body. *Id*. Further, as the Third Circuit stated in *Jetter*, slip. op. p. 3, "[a] prisoner must properly exhaust administrative remedies or risk procedural default." (citing *Spruill* 372 F.3d at 230).

In this case, the Plaintiff has failed to exhaust his retaliation claims against Defendants Dougherty, Walker and Tennis. It is undisputed that the Plaintiff did not file a grievance claiming that he was being retaliated against by Defendants Dougherty, Walker and Tennis because of his grievance against CO Shady. It is now too late for the Plaintiff to file such a grievance against the stated Defendants.[6] Thus, the Plaintiff has procedurally defaulted any retaliation claims against the stated Defendants. In light of the undisputed evidence regarding the Plaintiff's failure to exhaust any of his available administrative remedies regarding his present retaliation claims, we find that the Plaintiff has not shown substantial compliance with the DOC's DC-ADM 804 administrative remedy process. Further, as stated, the Plaintiff's opportunity to file a grievance concerning his present retaliation claims has long expired. *See Jetter*, slip. op. p.3. Thus, because the Plaintiff failed to comply with the requirements of DC-ADM 804, the Plaintiff procedurally defaulted on his First Amendment retaliation claims against Defendants Dougherty, Walker and Tennis.

---

[6] As in the *Jetter* case, our Plaintiff does not claim that the prison staff prevented him from timely filing a grievance against Defendants Dougherty, Walker and Tennis claiming they retaliated against him in any manner. *Jetter*, slip. op. p. 3, n.1.

Therefore, because the Plaintiff failed to exhaust and also procedurally defaulted on his administrative remedies, the Defendants' Motion to Dismiss on the retaliation claims against Defendants Dougherty, Walker and Tennis should be granted.  Moreover, even if the Plaintiff had indeed exhausted or had not procedurally defaulted on his administrative remedies, his retaliation claims would likely fail on the merits.

### B. *The Merits of the Retaliation Claim*s

Even if the Plaintiff had exhausted or had not defaulted on the prison's administrative remedies for his First Amendment retaliation claims against Defendants Dougherty, Walker and Tennis, his retaliation claims are still suspect.  In *Sposto v. Borough of Dickson City*, this Court examined a First Amendment retaliation claim and instructed a three-part test.  2005 WL 3307333, at *2 (M.D. Pa. Dec 06, 2005) (denying a motion to dismiss a retaliation claim).  A plaintiff must first prove that the activity in question is constitutionally protected; second, that the government responded with retaliation; third, that the protected activity caused the retaliation.  *Id.*  At the pleading stage, the only matter of law is whether the first element is pleaded adequately.  *Id.* at *3.  Thus, the retaliation and causation requirements need not be reviewed at this stage of our case. *See id.*

Here, the activity in question, namely the Plaintiff's filing of a Grievance against Defendant CO Shady, is constitutionally protected.  However, we note that, even though the Plaintiff's retaliation claim may survive the first prong of the *Sposto* test, it is doubtful that he would be able to show that the government had responded with retaliation or that his filing of a Grievance against CO Shady caused the retaliation he claims.  The Plaintiff claims that Defendants Dougherty and

Walker shut off his cable as a result of his filing a grievance against CO Shady for sexual assault, and

contends that Defendant Tennis also retaliated against him for filing this grievance by opening his

legal mail outside of his presence.  (Doc. 53, pp. 1-2).  However, the Plaintiff's retaliation claims

against Defendants Dougherty, Walker and Tennis are without merit because the Defendants have

shown that the Plaintiff's cable was shut off and his legal mail was opened as a result of strict prison

procedure, and not retaliation.

The Plaintiff's retaliation claims against Defendants Dougherty and Walker must fail on the

merits because the Plaintiff's cable was shut off due to his lack of sufficient funds to pay for the

service, as is mandated by prison procedure.  Upon review of the record, the Defendants' Brief and

their exhibits accurately summarize the prison's cable television procedure:

> Cable television service for inmates is directed by the Department of
> Corrections Administrative Directive DC-ADM-002.  (Doc. 31, Att. 1, Ex. A,
> ¶ 7.).  This Directive establishes the policy and procedure for inmate cable
> services and outlines the financial responsibilities of the inmates relative to
> there accounts.  (*Id*.).  The monthly fee for cable is taken from the inmate's
> institution account and is deducted on the last Thursday of each month (or
> a prior regular work day should the regular deduction date fall on a holiday).
> (*Id*. at ¶ 8.).  All inmates are responsible for having their accounts sufficiently
> funded at the time of the deduction and the failure to have such funds results
> in automatic discontinuation of the cable service.  An inmate must wait at
> least 60 days to reapply for cable in the event it is discontinued for failure to
> have sufficient funds.  (*Id*. at ¶ 9.).

(Doc. 31, pp. 8-9).  *See also* Doc. 31, Att. 1, Ex. A-2.

The Plaintiff contends that Defendants Dougherty and Walker shut off his cable service

because of insufficient funds despite the fact that a money order to cover his cable cost had been

deposited on February 9th, 2004, the day the cable service cost was to be deducted from his

account.  However, the record shows that on February 9th, the Plaintiff's account was in arrears

even after his payroll deposit.  The cable service charge was deducted from his account after the

payroll had been deposited, and seemingly before the Plaintiff's money order had been deposited.

(Doc. 31, Att. 1, Ex. A-6, p. 3).  As the Defendants point out, the Plaintiff's cable was not shut off

immediately, as procedure calls for, but the Plaintiff was afforded leniency and given until February

26, 2004, to obtain the funds for his cable service.  (Doc. 31, p. 9).  The Plaintiff's account was in

arrears on February 26, 2004, at which time, the Plaintiff's cable service was discontinued. (Doc.

31, Att. 1, Ex. A-6, p. 3 and p. 10).  Defendants Dougherty and Walker discontinued the Plaintiff's

cable service due to the Plaintiff's lack of sufficient funds, despite the leniency they afforded him

to rectify his account.  Thus, the Plaintiff has not shown that the "cause" of his cable service being

shut off was the filing of a grievance against CO Shady.  As the Third Circuit recently stated in *Smith*

*v. Dept. of Gen. Ser. of PA*, C.A. No. 05-3405 (3d Cir. May, 7, 2006), slip. op. p. 8 (Non-

precedential), "a claim of First Amendment retaliation requires personal involvement in the alleged

retaliatory conduct so that there is causal connection."

  In this case, the record does not show that Defendants Dougherty and Walker took the

alleged retaliatory actions against the Plaintiff of discontinuing his cable service due to the Plaintiff

exercising his First Amendment right by filing a grievance against CO Shady.

  The Plaintiff's retaliation claim against Defendant Tennis for opening his legal mail is also

without merit, since the opening of his legal mail, absent a control number, is standard prison

procedure.  The Plaintiff does not show any causal link between the filing of a grievance against CO

Shady and the opening of his legal mail.  The Plaintiff does not provide evidence that his legal mail

was being opened in his presence prior to his filing a grievance against CO Shady, and that his

grievance against CO Shady caused his mail to be opened in the mail room, outside of his

presence.

Regarding the retaliation claim against Defendant Tennis, the District Court stated:

> We do note that Plaintiff has alleged that **after** filing a grievance, Defendant
> Tennis began opening and reading his legal mail. Plaintiff does not indicate
> whether such conduct also occurred **prior** to his filing of the grievance. If, for
> example, discovery reveals that it was standard practice in the prison to open
> and read prisoner's mail, then this factor could be of potential detriment to
> Plaintiff's retaliation claim.

(Doc. 13, p. 8, n. 3).

The Defendants' Brief and exhibits accurately summarize the procedure regarding the

opening and reading of the Plaintiff's mail:

> The procedures outlining inmates' mail in state correctional institutes is
> contained in Department of Corrections ADM-803. (Doc. 31, Att. 1, Ex. A,
> ¶ 10.). If a court or an attorney wants to send confidential legal mail to an
> inmate that they desire to have opened only in the inmate's presence, they
> must submit a request to the Office of Chief Counsel for a confidential
> control number. (*Id*. at ¶ 11.). Upon receipt of such a request, the Office of
> Chief Counsel will provide them with a control number that is placed on the
> outside [of] each envelope to be mailed that contains confidential legal
> materials. (*Id*.).
>
> The assigned control number is not revealed to the inmate and upon receipt
> of the mail at the institution, the mail room crosses out the control number
> or otherwise removes it prior to sending the mail to the inmate's housing
> location. (*Id*. at ¶ 12.). It is then that such mail is opened in the presence of
> the inmate and checked for contraband, but not read. If mail appears to
> come from a court or an attorney to an inmate without a control number
> then all such mail is handled routinely and opened by the mail room,
> inspected for contraband, resealed and then delivered to the inmate. (*Id*. at
> ¶ 14.).

(Doc. 31, pp. 7-8). *See also* Doc. 31, Att. 1, Ex. A-3.

The Plaintiff contends that Defendant Tennis began opening his mail following the filing of his grievance against CO Shady.  (Doc. 53, pp. 2-3).  However, as the Defendants point out, the mail procedure at the prison was in place before and after the Plaintiff's grievance against CO Shady was filed.  (Doc. 31, pp. 7-8).  The Plaintiff argues that the prison continued opening his mail even after a District Court instituted an Order directing that the Plaintiff's mail from the courts be opened in his presence.  (Doc. 53, pp. 2-3).  The Chief Counsel of the Department of Corrections responded to this claim by pointing out that the prison mail procedure was not subject to a Court Order and wrote the District Court explaining the policy, and assigned a control number for the Court to use in sending the Plaintiff's mail.  (Doc. 31, p. 8).  However, the District Court did not utilize the control number, and therefore the Plaintiff's legal mail continued to be opened outside of his presence.  (Doc. 31, p. 8 & Doc. 31, Att. 1, Ex. A, ¶ 28.).  Thus, all mail sent to the Plaintiff during his entire incarceration at SCI-Rockview was opened in the mail room, outside of his presence under DC-ADM 803.  (Doc. 31, Att. 1, Ex. A, ¶ 29.).  There was no change with respect to the opening of the Plaintiff's mail after he filed his grievances against CO Shady.  (*Id*.).

Upon review of the record, we find that the opening of the Plaintiff's legal mail was a result of prison procedure and not done by Defendant Tennis in retaliation against the Plaintiff for filing grievances against CO Shady.

Therefore, we shall recommend that the Defendants' Motion be granted **(Doc. 29)** and that the Plaintiff's First Amendment retaliation claims be dismissed against Defendants Dougherty, Walker, and Tennis.

**IV.  Recommendation.**

Based on the above, it is respectfully recommended that the Defendants' Motion be granted **(Doc. 29)** and that the retaliation claims against Defendants Dougherty, Walker and Tennis be dismissed.   It is also recommended that this case be remanded to the undersigned for further proceedings.



**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August 16, 2006**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENJAMIN SMITH, | : | CIVIL ACTION NO. **3:CV-05-2663** |
| | : | |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| OFFICER SHADY,  et al., | : | |
| | : | |
| Defendants | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **August 16, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

14

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


 

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: August 16, 2006**