IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENJAMIN SMITH, | : | No. 4:05-CV-2663 |
| Plaintiff, | : | (Judge Jones) |
| v. | : | (Magistrate Judge Blewitt) |
| OFFICER SHADY, et al., | : | |
| Defendants. | : | |

**MEMORANDUM**

**October 25, 2007**

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Pending before this Court are several filings: a second Motion for Sanctions in the Nature of a Request for Dismissal ("Defendants' Motion") (doc. 103), filed by Defendants[1] on June 15, 2007; a Motion for Protective Order (doc. 114), filed by pro se Plaintiff Benjamin Smith ("Plaintiff" or "Smith") on or about July 17, 2007; and a "Motion in Opposition to Dismissal" (doc. 117), also filed by Plaintiff on or about July 17, 2007. On July 26, 2007, United States Magistrate Judge Thomas M. Blewitt ("Magistrate Judge" or "Magistrate Judge Blewitt") filed a

[1] The individuals who remain Defendants to this action are Officer Shady, Earl Walker, Chaplain Muhammad Ajjeh ("Chaplain Ajjeh"), Francis Dougherty, and Franklin Tennis. However, despite numerous attempts, Chaplain Ajjeh has not been served because he cannot be located. Accordingly, Chaplain Ajjeh has not joined in the pending Motion for Sanctions in the Nature of a Request for Dismissal. Nevertheless, in the interests of simplicity, herein we will refer to the Motion as Defendants' Motion.

Report recommending that Defendants' Motion be granted and that Plaintiff's Motions be denied. (Rec. Doc. 120). For the reasons that follow, we will adopt the learned Magistrate Judge's Report to the extent it is consistent herewith, and we will dismiss the instant action.[2]

**FACTUAL BACKGROUND/PROCEDURAL HISTORY**:[3]

On December 27, 2005, Plaintiff, a prisoner currently housed at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), initiated this 42 U.S.C. § 1983 action by filing a Complaint (doc. 1) in the United States District Court for the Middle District of Pennsylvania. Therein, he alleged numerous violations of his Constitutional rights during his stay at the State Correctional Institution in Rockview, Pennsylvania ("SCI-Rockview"), and he named as Defendants fourteen (14) employees of the Pennsylvania Department of Corrections ("DOC").

However, following the referral of this case to Magistrate Judge Blewitt for

---

[2] Although we recognize that Chaplain Ajjeh has not joined in Defendants' instant Motion, because Chaplain Ajjeh has never been served with the Complaint and his whereabouts remain unknown, we will adopt the Magistrate Judge's recommendation to dismiss this action as to this Defendant as well.

[3] This strenuously litigated action has an extensive factual background and procedural history, with which this Court and the parties are well-aware. Moreover, only the events of the past several months are relevant to our disposition of the pending Motions and Report. Thus, with the exception of a brief introduction, our recitation of the factual background and procedural history is largely limited to the events of recent months.

preliminary review, and the subsequent proceedings, only the aforementioned five (5) Defendants currently remain parties to this action.  The claims remaining against these Defendants are as follows: an Eighth Amendment deliberate indifference claim and conditions of confinement claim against Officer Shady and Chaplain Ajjeh, and a retaliation claim against Francis Dougherty, Earl Walker, and Franklin Tennis.

On February 27, 2007, the Magistrate Judge granted (doc. 92) Defendants' Motion to Take Plaintiff's Deposition (doc. 91).  Thereafter, on April 10, 2007, the Magistrate Judge granted (doc. 96) Plaintiff's Motion for Extension of Time to Complete Discovery (doc. 95), and the discovery deadline was set for May 6, 2007.  Thus, Plaintiff's deposition via video conference was scheduled for May 1, 2007, and he received notice thereof on April 27, 2007.[4]

On May 1, 2007, upon defense counsel's attempt to commence the scheduled deposition, Plaintiff refused to be disposed.  (See Rec. Doc. 97-2, Exh.

---

[4] At the attempted Tuesday, May 1, 2007 deposition, Plaintiff indicated that he received notice of the deposition on Friday, April 28, 2007. (Rec. Doc. 97-2, Exh. C at 2, 7).  However, Friday's date was actually April 27, 2007, so the parties dispute whether Plaintiff received notice on Friday or Saturday.

Based on Plaintiff's reference to Friday, which the Magistrate Judge found to be more reliable than Plaintiff's reference to the date, and Plaintiff's indication that he had three (3) days to prepare – apparently Saturday, Sunday, and Monday, the Magistrate Judge concluded that Plaintiff received notice of the deposition on Friday, April 27, 2007.  (Rec. Doc. 102 at 2).  Because we find the Magistrate Judge's reasoning underlying said conclusion sound and the record supporting the bases therefor, we agree that Plaintiff received notice of the deposition on Friday, April 27, 2007.

C). Plaintiff's justifications for his refusal were two-fold: he was not afforded sufficient notice of the deposition and the three days that he had to prepare for the deposition were not beneficial because his institution, then FCI-Ray Brook, was in a security lockdown.  Id.

The following day, May 2, 2007, Defendants filed their first Motion for Sanctions in the Nature of a Request for Dismissal.  (Rec. Doc. 97).  Nearly a month later, on or about May 25, 2007, Plaintiff filed a "Motion for Postponement of Deposition due to Inadequate and Delayed Notice and in Opposition to Defendant's [sic] Request for Judgment."  (Rec. Doc. 99).

On June 1, 2007, the Magistrate Judge issued an Order disposing of the parties' pending Motions.  (See Rec. Doc. 102).  Specifically, the Magistrate Judge denied Plaintiff's "Motion for Postponement of Deposition due to Inadequate and Delayed Notice and in Opposition to Defendant's [sic] Request for Judgment" (doc. 99) and granted Defendants' first Motion for Sanctions in the Nature of Dismissal (doc. 97) to the extent that Plaintiff's April 25, 2007 discovery requests be deemed untimely and that Plaintiff not be afforded any more discovery extensions.  The Magistrate Judge also extended the discovery deadline to July 31, 2007 for the sole purpose of allowing Defendants to reschedule the deposition of Plaintiff.

The Magistrate Judge's June 1, 2007 Order (doc. 102) was based on his conclusions that although Plaintiff failed to show good cause for his refusal to be deposed, dismissal of the action was too severe a sanction to impose at that time. However, the Magistrate Judge explicitly forewarned Plaintiff that "[f]ailure of Plaintiff to be deposed a second time will result in a recommendation that his case be dismissed with prejudice." (Rec. Doc. 102 at 4).

On June 11, 2007, Defendants attempted for a second time to depose Plaintiff via video conference. (See Rec. Doc. 103-2, Exh. A). Although Plaintiff now contends that defense counsel agreed to postpone this deposition (doc. 124 at 3; 127 at 6),[5] the Magistrate Judge concluded that the attempted deposition ended

---

[5] Plaintiff's contention that defense counsel agreed to postponement is based on taking one of defense counsel's statements out of context: "we can discontinue today's scheduled deposition." (See Rec. Doc. 127 at 6). Context, however, makes it is quite clear that rather than expressing agreement to postponement, defense counsel was simply recognizing that Plaintiff's refusal to be deposed under the existing circumstances, that is, under supervision of Plaintiff by two staff members, would necessarily end the deposition:

> Mr. Keating: So you are not permitting me to depose you today?
>
> Mr. Smith: In light of the fact that I have said that I'm going to move for a protective order with the court to postpone this deposition, I am now waiting for the court, after I can file this protective custody, and see how we will proceed from there.
>
> Mr. Keating: I understand that. I'm just asking for a yes or no answer. Are you going to allow me to depose you today, yes or no? And then you can follow up with whatever basis you want.
>
> Mr. Smith:
>
> > Your question appears to be asking me something outside of what I'm saying. I have no choice but to file for protective custody order. I mean, I don't know

due to Plaintiff's refusal to be deposed, and in light of the record in front of us, we agree. Indeed, our review of the entire transcript from the attempted June 11, 2007 deposition reveals that despite Plaintiff's clever attempts to avoid defense counsel's repeated questions as to whether Plaintiff was refusing to be deposed, and despite Plaintiff's assertions that he was moving for a postponement of the deposition in order that he might file a Motion for Protective Order with the Court, Plaintiff was, in fact, refusing to be deposed under the circumstances that then existed, supervision of Plaintiff by two staff members of the prison.

Following the second unsuccessful attempt to depose Plaintiff, three pending Motions were filed.[6] First, on June 15, 2007, Defendants filed the second Motion

---

> what it is that you're asking me, because the last time you asked me am I refusing to be deposed and all of these other things, I am not doing any of those things.
>
> If counsel could perhaps persuade staff here that this is a matter that nonparties does not have to be present at or could be harmful that nonparties will be present at, I'm willing to be deposed.
>
> Mr. Keating: It is not my duty to make any ruling relative to the parameters of whom is supposed to be there or who is not, given the nature of the institutional setting that you're in. But if you're saying that you don't want to be deposed today and you will not be deposed today until such a motion can be decided by the court, then we can discontinue today's scheduled deposition. Is that fair?
>
> Mr. Smith: Yes, sir.

(Rec. Doc. 103-2, Exh. A at 6).

[6] On or around June 19, 2007, Plaintiff also filed what the Magistrate Judge appropriately construed as a Motion for Reconsideration (doc. 104) of his June 1, 2007 Order, and disposed of on June 25, 2007 (doc. 107).

Plaintiff's Objections to the instant Report include his assertion that the Magistrate Judge "erroneously intercepted" his June 19, 2007 submission, which he now contends was

for Sanctions in the Nature of a Request for Dismissal. (Rec. Doc. 103). Second, on or about July 17, 2007, Plaintiff filed a Motion for Protective Order[7] (doc. 114) and a "Motion in Opposition to Dismissal" (doc. 117).

On July 26, 2007, the Magistrate Judge issued a Report outlining his recommendations as to our disposition of the three pending Motions. As Plaintiff has filed Objections to the Report (doc. 124), Defendants have filed their

---

intended to be an Appeal to this Court. Having now reviewed de novo all aspects of the instant Report, which necessarily takes into account the propriety of Magistrate Judge's earlier Orders related hereto and their impact on the present disposition, we find Plaintiff's disagreement with the construal of his June 19, 2007 submission immaterial. If we were to disagree with the implications of the Magistrate Judge's June 1, 2007 Order as they bear on our disposition of the instant Report, we could do so at this juncture.

[7] Plaintiff's assertion that he first attempted to twice file this Motion in the District Court for the Northern District of New York appears to be accurate. (See Rec. Doc. 124, Exhs. A-D). Nevertheless, as Plaintiff recognizes, this Court also had the authority to dispose of the Motion. See Central States, Southeast & Southwest Areas Pension Fund v. Quickie Transp. Co., 174 F.R.D. 50 (E.D. Pa. 1997). In fact, frequently courts located in the district in which dispositions are to be taken defer and/or remit such Motions to the court in which the action is pending. Id. at 51. Thus, we find it somewhat suspect that Plaintiff would seek a ruling from another court under the auspices of Rule 26(c) of the Federal Rules of Civil Procedure, which was designed to aid parties in cases where the site of deposition was geographically distant from the court in which the action was pending, under these circumstances: New York and Pennsylvania border one another, and this Court, not that in the Northern District of New York, is familiar with the circumstances under lying this action.

In any event, we do not find the filing date of Plaintiff's Motion for Protective Order, whether one day or thirty days after the second attempted deposition, dispositive. Rather, what we find telling is that fact that it was filed after the attempted deposition. Further, because it was filed after the second attempted deposition, we agree with the Magistrate Judge that it was untimely. Indeed, we suspect, and defense counsel confirms (doc. 126 at 4), that prison staff were also present at the first attempted deposition of Plaintiff. However, Plaintiff neither raised objection thereto on May 1, 2007 nor filed a Motion for Protective Order on the basis thereof once he knew that he would be sitting for deposition again, presumably under the same circumstances.

responses[8] thereto (docs. 125, 126), and Plaintiff has filed his reply (doc. 127), this matter is ripe for our disposition.

**STANDARD OF REVIEW**:

When objections are filed to a report of a magistrate judge, we make a de novo determination of those portions of the report or specified proposed findings or recommendations made by the magistrate judge to which there are objections. See United States v. Raddatz, 447 U.S. 667 (1980); see also 28 U.S.C. §636(b)(1); Local Rule 72.3l. Furthermore, district judges have wide discretion as to how they treat recommendations of a magistrate judge. See id. Indeed, in providing for a de novo review determination rather than a de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. See id., see also Mathews v. Weber, 423 U.S. 261, 275 (1976); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

**DISCUSSION**:

The Magistrate Judge’s Report recommends that Defendants’ second Motion

[8] Three (3) days after submission of their initial response, Defendants submitted an amended response. Based upon the substantial time that elapsed between the filing of Defendants’ amended response and Plaintiff’s reply, as well as the substance of Plaintiff’s reply, it is quite clear that Plaintiff received both responses prior to the composition of his reply.

for Sanctions in the Nature of a Request for Dismissal[9] (subsequently, "Defendants' Motion") (doc. 103) be granted and that Plaintiff's Motion for Protective Order (subsequently "Plaintiff's Motion") (doc. 114) and "Motion in Opposition to Dismissal"[10] (doc. 117) be denied.  (See Rec. Doc. 120).  The Magistrate Judge reached this recommendation based upon his consideration of first Plaintiff's Motion and then Defendants' Motion.  With respect to Plaintiff's Motion, the Magistrate Judge concluded that it should be denied for several reasons, including, inter alia: 1) it was untimely filed because Plaintiff failed to submit it prior to the second scheduled deposition; 2) the privacy concerns raised therein are not legitimate given that this action is a matter of public record; and 3) deposing Plaintiff without prison officials present is unworkable because it presents a security risk,[11] see Fraise v. Terhune, 283 F.3d 506, 516 (3d Cir. 2002)

---

[9] As the Magistrate Judge noted, Defendants' Motion does not indicate whether it seeks dismissal of this action pursuant to Federal Rule of Civil Procedure 37(b), for failure to abide by a discovery order, or Federal Rule of Civil Procedure 41(b), for failure to prosecute or abide by a court order.  However, the Motion and supporting brief appear to seek dismissal pursuant to both of the aforementioned Rules and the Magistrate Judge appropriately construed the Motion as seeking dismissal on both bases.

[10] Initially, we note that as Plaintiff's "Motion in Opposition to Dismissal" is simply a one-page submission reiterating that he opposes Defendants' second Motion for Sanctions in the Nature of a Request for Dismissal, without adding any substantive support for his opposition, we will deny it because it is repetitive and unnecessary.  Accordingly, we will not further refer to Plaintiff's "Motion in Opposition to Dismissal" or our reasons for its denial.

[11] The Magistrate Judge aptly relied upon a June 27, 2007 letter from the Warden of the institution at which Plaintiff was housed, which indicated that deposition of Plaintiff without supervision presented "a significant security risk."  (See Rec. Doc. 120 at 11 (quoting Rec. Doc.

(reiterating that deference to prison authorities and regulations is appropriate where prison security is at issue). With regard to Defendants' Motion, the Magistrate Judge concluded that it should be granted after undertaking a considered application of the Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863 (3d Cir. 1984) factors.[12] Indeed, the Magistrate Judge found that with the possible exception of sixth factor, the meritoriousness of the claim or defense, all factors weigh in favor of dismissing this action.

In his Objections, this rather adroit, but sadly misguided Plaintiff raises a multitude of issues with respect to the content and conclusions contained within the Magistrate Judge's Report, a number of which we have previously addressed herein, and which will not be repeated here. Moreover, Plaintiff's additional Objections can be viewed in terms of their relation to the two pending Motions, and we will address them in turn.

First, Plaintiff objects to the recommendation that his Motion be denied. In support of this Objection, Plaintiff argues that his privacy concerns form the requisite "good cause" for the granting of a protective order because, e.g., "'if a

---

109-2, Exh. A at 2)).

[12] The Magistrate Judge appears to have properly concluded that regardless of whether dismissal is sought pursuant to Rule 37(b) or Rule 41(b), consideration of the Poulis factors is advisable. See Hunt v. City of Scranton, 2007 WL 1624099, at *2 (3d Cir. 2007). Accordingly, we will briefly reiterate the salient points the learned Magistrate Judge made with respect thereto.

case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality.'" (Rec. Doc. 124 at 7 (quoting Pansy v. Borough of Stroudsburg, 23 F.3d 772, 788 (3d Cir. 1994))). Indeed, Plaintiff argues that the Magistrate Judge's "cursory consideration" of Pansy's "good cause" standard, and the seven factors to be considered in analyses thereunder, see Arnold v. Commonwealth of Pennsylvania, 477 F.3d 105 (3d Cir. 2007), resulted in the erroneous recommendation that Plaintiff's Motion be denied.

Our review of the learned Magistrate Judge's thorough consideration of Plaintiff's Motion leads us to conclude that his recommendation that the Motion be denied is sound. We so conclude for several reasons. First, as the Magistrate Judge noted, given that prison staff were present at the first attempted deposition of Plaintiff, if Plaintiff wished to object thereto or file a motion based thereupon, he should have done so at that first deposition, or at least prior to the second scheduled deposition. Accordingly, his filing of the Motion at any time after the second attempted deposition was untimely. Second, as the Magistrate Judge also found, despite Plaintiff's similarly belated[13] suggestion that the deposition occur

[13] On this point, Plaintiff's Objections appear deceptively vague, insofar as they could be read to suggest that Plaintiff requested telephonic conferencing as a solution during the second attempted deposition. (See Rec. Doc. 125 at 2 (Defendants counter the suggestion that this request was made during the second attempted deposition)). However, to his credit, when

via telephonic conference, rather than video conference (see doc. 116 at 6), the viability of this as an avenue by which Plaintiff's deposition could be taken without any staff being present is unknown at best.[14]  Indeed, cognizant of the deference that courts are to afford prison officials and policies in regard to matters that implicate prison security, Fraise, 283 F.3d at 516, Plaintiff's argument that any alternative avenue[15] exists by which his deposition could be taken while maintaining his privacy is simply unpersuasive.  In sum, then, we think that both the untimely nature of Plaintiff's Motion and the impossibility of relief which it

---

confronted with Defendants' valid counter-argument, Plaintiff acknowledged, somewhat necessarily, that the first juncture at which he raised this suggestion was in his briefing on Defendants' pending Motion.  (See Rec. Doc. 127 at 2 (citing Rec. Doc. 116 at 6)).

[14] Indeed, in support of the proposition that such a telephonic conference would be unmonitored, Plaintiff submits a page apparently contained within the Admission & Orientation Handbook of his current institution, FCI-Cumberland.  (See Rec. Doc. 127, Exh. 1).  The Handbook appears to provide:

> In order to make an unmonitored phone call between an attorney and an inmate, the inmate must submit a Copout to his Unit Manager.  Ordinarily, legal calls are facilitated only when the inmates has [sic] an urgent matter before the court.  Phone calls placed through the regular inmate phones are subject to monitoring.

Id.  Our reading of this provision, which seems to have been implemented in order to maintain attorney-client privilege, leads us to believe that it could not be used in order to facilitate a potentially lengthy telephonic deposition between an inmate and opposing counsel in a civil action, where surely no attorney-client privilege exists.

[15] Notably, in the instant submissions (doc. 127 at 3), Plaintiff also suggests that an in-person deposition would be another avenue by which Plaintiff's privacy could be maintained, presumably because no staff members would be present and the "attorney visit" would only be visually monitored.  Once again, we cannot know for certain what arrangements FCI-Cumberland would provide were an in-person deposition arranged, but we approach with some incredulity Plaintiff's suggestion that the prison would allow him to meet with opposing counsel without any staff members being present.

seeks renders denial thereof sufficiently justified.

However, assuming arguendo that neither alone nor in combination do the above two reasons justify the denial of Plaintiff's Motion, we turn to Plaintiff's argument that a factor by factor analysis under Pansy would change our ruling as to this issue. We find this argument to undermined by, inter alia, Plaintiff's own quotation from Pansy, which was noted above. Simply stated as to this particular factor upon which Plaintiff relies, this is not a matter concerning only private litigants involved in a matter of little public interest. Rather, it concerns allegations as to the *treatment of inmates by state employees at a state prison*, and has resulted in the representation of the named parties by the state Attorney General's office. Although making the call as to whether a particular case is of public interest can be problematic in some situations, we are convinced that this case assuredly concerns public litigants and public interests.[16] It is, accordingly, not a close call at all.

Second, Plaintiff objects to the recommendation that Defendants' Motion be granted. In support thereof, Plaintiff disputes the Magistrate Judge's findings as to the Poulis factors. For example,[17] Plaintiff challenges the Magistrate Judge's

[16] Our review of the other six Pansy factors leads us to conclude that a thorough discussion thereof would not change our conclusion.

[17] With the exception of Plaintiff's argument that his Motion was timely, and thus, he has not acted in a dilatory manner, which our earlier discussion rejecting Plaintiff's argument as to

conclusion that he has acted in bad faith and in a dilatory manner.  In support thereof, Plaintiff cites one of his statements during the second attempted deposition: "If counsel could perhaps persuade staff here that this is a matter that nonparties does [sic] not have to be present at or could be harmful that non-parties will be present at, I'm willing to be deposed."  (Rec. Doc. 124 at 10-11 (quoting Rec. Doc. 103, Exh. A at 6)).  By way of further example, Plaintiff argues that a sanction other than dismissal could be imposed.  Plaintiff suggests that this Court fashion a sanction whereby Plaintiff would be required to raise all objections to deposition prior to a potential third deposition and whereby Plaintiff's failure to be deposed after all his objections thereto are resolved will result in dismissal.

    We do not find persuasive any of Plaintiff's arguments as to the Poulis factors.  Taking the examples mentioned above in turn, we first note that given the astute and calculated nature of Plaintiff, of which at this stage in the proceedings we are well-aware, we find it very likely that his "I'm willing to be deposed" remark was simply part of Plaintiff's strategy going into the scheduled deposition.  This is confirmed by review of the complete transcript from the June 11, 2007 session, which demonstrates Plaintiff's absolute unwillingness to answer repeated inquiries as to whether he was refusing to be deposed.  Indeed, the transcript

---

the timeliness of his Motion necessarily addresses, below we address the only Poulis factors for which Plaintiff provides a substantive argument in support of his Objections.

reveals that Plaintiff's strategy was to try to avoid implication of the Magistrate Judge's June 1, 2007 warning that failure to be deposed would result in a recommendation that this action be dismissed. Thus, we think that rather than demonstrating Plaintiff's good faith, his responses at the second attempted deposition support the Magistrate Judge's finding that he has been acting in bad faith and in a dilatory manner. Simply put, Plaintiff's persistence in his "wise guy" behavior has caused him to outsmart himself.

Second, we find that Plaintiff's proposed sanction presents neither a workable solution nor one that would be likely to succeed. Indeed, it is most assuredly not the procedure of this Court, nor any other with which we are aware, to rule on all objections to depositions prior thereto. Rather, as a matter of course, objections are ruled upon following the completion of depositions, and Plaintiff's attempt to have this Court do otherwise demonstrates one rationale therefor: nearly eight months have passed since the Magistrate Judge entered an Order that Plaintiff could be deposed, and yet to date, no deposition has occurred. Further, in view of Plaintiff's tactics to date, we are confident that even were we to simultaneously permit and order Plaintiff to file all objections prior to a potential third deposition, the outcome would be all too predictable. While we must afford pro se litigants, such as Plaintiff, a wide berth, even they must ultimately play by the rules.

Instead, Plaintiff seeks to play the system, which we will neither countenance nor condone.

Finally, in the interest of completeness, we note that having considered the record de novo, as required given the plethora of Objections raised by Plaintiff, we nonetheless agree with the Magistrate Judge's very thorough application of each of the six Poulis factors (see doc. 120 at 13-23), and we specifically incorporate it herein by reference.[18] Accordingly, we will grant Defendants' Motion, and we will dismiss this action with prejudice against all remaining Defendants, pursuant to Rules 37(b) and 41(b) of the Federal Rules of Civil Procedure.

For all of the foregoing reasons, this Court shall overrule Plaintiff's Objections to the Report (doc. 124) and adopt the learned Magistrate Judge's Report (doc. 120) to the extent it is consistent herewith. An appropriate Order closing this case shall issue.

[18] Although one of the Poulis factors, the meritoriousness of the claim or defense, could potentially weigh against dismissal, it is the only such factor. Further, a court need not find all factors weighing in favor of dismissal in order to support dismissal. See Hunt, 2007 WL 1624099. See also Fattah v. Beard, 214 Fed. Appx. 230, 233 (3d Cir. 2007).